# Richard E. Kwasnik

## Attorney-at-Law*

*New York*
295 Madison Avenue, 21st Floor
New York, NY 10017
Tel. (212) 808-5440
Fax. (212) 808-4962

E.mail: Kwasnik@earthlink.net

*Puerto Rico*
Villas del Faro, Suite 1110
Maunabo, PR 00707
Tel. (787) 861-2445

Mailing Address: 667 Ponce de Leon Avenue
Box 207
San Juan, PR 00907

FILED
U.S. ... O.N.Y.
SEPT 7 2005
BROOKLYN OFFICE

August 30, 2005

**By Facsimile and ECF**

The Honorable John Gleeson
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

RE: United States v. Cecilio Reyes
Criminal Docket No.: 04-CR-960(JG)

*[Handwritten note from judge:]* The government shall respond by September 16. Reply by September 23. Argument and (if necessary) sentencing at 2:00 on Sept. 30, 2005. So ordered.
s/John Gleeson

Dear Judge Gleeson:

On May 25, 2003, Mr. Reyes was found guilty by a jury of attempted possession with the intent to distribute at least one kilogram of heroin. The Court allowed defense attorney, Mr. Michael Schneider of the Federal Defender's Office time to file a Rule 29 motion. Subsequently the Court relieved Mr. Schneider and this office was appointed for all purposes.

*[Handwritten margin notes:] USDJ  9-1-05*

What follows is Mr. Reyes' Rule 29 motion as to:

(1) Did he attempt to possess the sample or one kilogram of heroin?

(2) Did the evidence show an attempt to distribute heroin?

* ADMITTED: NEW YORK, FLORIDA, CALIFORNIA and PUERTO RICO (LIMITED TO FEDERAL COURT)

## FACTS

Alvear Pino – Hernandez (Hernandez) was arrested in Puerto Rico when he delivered four kilograms of heroine to Officer Orlando Martinez. As part of this operation, Officer Martinez was to deliver one kilogram of heroin to Hernandez's son Wilfreddy Pino – Correa (Correa), in Queens.

Agent Martinez did in fact fly to New York and undertook a controlled delivery of a sham kilogram to Correa on September 29, 2004 at the Marriott Hotel near Kennedy Airport, resulting in Correa's arrest.

At some point prior to his arrest Mr. Correa had gone to a garage in the Bronx to try to buy cocaine. Though this transaction did not take place, Correa had a conversation with defendant Reyes about repairs to his car and if Reyes could build a trap in his car. After Correa's car was repaired and he was leaving, Reyes approached him and asked if he, Correa, could obtain cocaine. There was discussion of businesses that would generate one or two kilos of cocaine per week. Correa said that cocaine was arriving and could give it to him at about 22. Reyes did not have a telephone but advised to call him at the shop and Reyes took down Correa's cell number. There was telephone contact on a few future occasions. Trial transcript – (T. – 103)

Subsequently Correa was advised that his father was sending a kilo of heroin. In a telephone conversation he was not able to make Reyes understand that heroin not cocaine was arriving and arranged a meeting in Elizabeth, New Jersey. Reyes arrived at the Elizabeth meeting with two men, one who was Carlos Adano. When Reyes became aware that the drug was heroin he stopped and had a conversation with Carlos Adano. Correa advise that the offering price was 57. Correa testified that "they" said that he should give it to them for 55 and he said no. (T. – 109)

Subsequent to the Elizabeth meeting Correa was arrested and eventually agreed to cooperate. In a recorded telephone conversation Correa stated he would give it to "them" for 55 and arrange to deliver a sample. To this end on September 29, 2004, defendant, Carlos Adano and Rosa Pontiers-Valdes arrived at the parking lot of a K-Mart located on

2

White Plains Road in the Bronx. Correa and Agent Hernandez had two small sham samples and attempted a controlled delivery.

Raising the trunk of the Correa vehicle was the arrest signal and at that event defendants Reyes, Adano and Valdes were seized. Adano and Valdes were subsequently released and defendant Reyes was charged with attempted possession with intent to distribute a controlled substance.

## ISSUE

**Was defendant Reyes' responsible for an attempt possession with intent to distribute a kilogram of heroin?**

## LAW

The Court charged the jury on the two theories by which an attempt could be consummated. The first was factual impossibility which is clearly relevant to the passing of the samples.

The second attempt theory was relevant to the issue of attempted possession one kilogram of heroin and if substantial steps had been taken to accomplish this end. To constitute a criminal attempt defendant must have been acting with the kind of culpability otherwise required for the commission of the crime which he is charged with attempting. Second the defendant must have engaged in conduct which constitutes a substantial step towards commission of the crime. Preparation is not an attempt, but some preparation may amount to an attempt.

"Whether conduct represents a substantial step towards the fulfillment of a criminal design is a determination so dependent on the particular factual context of each case that of necessity there can be no litmus test to guide the reviewing courts." US v. Manley, 632 F. 2d 978, 988 (2d Cir. 1980).

In US v. Delvecchio, 816 F. 2d 859, (2d Cir. 1987). Defendants were convicted of a conspiracy to distribute heroine and attempted possession of heroine with the intent to distribute. The evidence showed an initial meeting was held with the CI which lasted

3

about 10 minutes. At a subsequent meeting the price per kilogram was established, place of payment and transfer was agreed to and beeper numbers were exchanged. On the transfer date the CI and agents arrived at the agreed upon meeting place but the transaction was never consummated since defendants never showed up.

The Court held:

> Count Two of the indictment charged appellants with attempt to possess heroin on May 17, because they had failed to appear at the scheduled May 18 meeting. The only evidence of appellants' actions on May 18 consisted of their returning Agent Franciosa's telephone call. There was no evidence that appellants had set out for the meeting site but turned back; nor was there any evidence that they had either acquired or attempted to acquire the almost one million dollars necessary to complete the purchase.
>
> On May 17, appellants' plan to possess heroin had only advanced to the stage of meeting with their purported suppliers to work out the terms of the deal. We hold that evidence of a verbal agreement alone, without more, is insufficient as a matter of law to support an attempt conviction. Therefore, Count Two of the indictment should not have been submitted to the jury. Accordingly, we reverse appellants' attempt convictions and direct that Count Two be dismissed. (At. 862)

In Soares v. US, 66 F. Supp. 2d 391 (EDNY 1999), the court distinguished Delvecchio holding:

> In this case, however, Soares and Bahna had taken just the steps found lacking in Delvecchio. Specifically, when these two men drove into Caesar's Bay Bazaar on January 4, 1990, they were not coming to explore the possibility of dealing in drugs with Bencivengo. Rather, they were at the site on the date previously agreed to by the parties for the actual consummation of a ten kilogram transaction. Further, although this court may have erred in thinking that the targets actually had the purchase money with them, Bahna did assert that he had the necessary funds

4

available a short distance away for immediate transfer once he had satisfied himself that the drugs were as represented. It was only when this demand for inspection was rejected that the sale was aborted. (At. 408)

The Soares Court found that these defendants' failure to actually take possession of the drugs was for no moment because they were ready to consummate a deal.

> So in this case, it does not matter that Soares and Bahna did not actually bring the buy money with them to the shopping mall on January 4, 1990, or that they did not actually take possession of the drugs on that date. The evidence viewed in the light most favorable to the government shows that they were ready, willing, and able to consummate the drug deal on January 4, 1990, and that their trip to Caesar's Bay Bazaar was a substantial step in furtherance of the crime. This was sufficient evidence to support the conviction for criminal attempt. (At. 409)

**In the instant case price was not finalized or agreed to by this defendant nor did he ever commit to a particular quantity. These term were being offered by the CI but not finally negotiated by defendant. They were not ready, willing and able to consummate the drug deal on September 29, 2004.**

The events that transpired on September 29, 2004, were solely preparation. This is confirmed by Agent Hernandez.

> Q. What was your understanding of what was supposed to happen?
>
> A. What's supposed to happen is in normal procedures, normal dealings in the street, when you give a sample you go and test that sample and as soon as you said, Oh, I like the stuff or I like the quality of this heroine, I will buy the kilogram.
>
> **Q. So, as far as you know that day, just the sample was supposed to be transferred?**

5

A. Yes.

(T – page 284)

**The receipt of the sample was an attempt because of factual impossibility but was not a substantial step in attempting to possess a kilogram of heroin.**

## EVIDENCE INSUFFICIENT AS TO INTENT TO DISTRIBUTE REQUIREMENT

Intent refers to the state of mind with which the act is done. In the instant case the government has concentrated on the first prong of the statute, the Attempted to Possess a controlled substance. This is highlighted in the government summation.

> All they are doing is coming with themselves to get a sample, so they can test it. An 85 percent purity, ladies and gentlemen, they are coming back to get that kilo or heroine, that 55 later on. Not today. Some time later. And we know that that's how it works because we heard from it from Pino-Correa.

(T – Page 334)

The government did not pretend that there was any evidence of intended distribution, the AUSA concluded his summation as follows:

> The defendant knowingly and intentionally on September 29[th] attempted to possess a kilogram of heroin and set the wheels in motion by showing up for that deal. It is all in front of you, ladies and gentlemen.

(T – Page 340)

**Some evidence of attempt possession was presented but there is no evidence of intent to distribute. All the evidence focused on the attempt to possess with no legally admissible evidence on intent to distribute.**

6

The government did call Agent Cogan and qualified him as an expert in the area of narcotics trafficking technique and narcotics evaluation. He was shown two exhibits, Exhibit 1.01 and Exhibit 1.02. Exhibit 1.01 was 2,946 grams of 85 percent purity level.

Agent Cogan was asked:

Q. In your experience is possession of a kilogram of heroin that's between 84 and 85 percent pure consistent with personal use or distribution?

A. That would be consistent with distribution.

Q. Why is that?

A. It is just not a form of heroin of that purity level that a user would typically use. You're at risk of a lethal dose and weight and pure form that could be stepped on to make more money.

(T – page 296)

This is the only evidence offered to infer defendant's state of mind to possess with intent to distribute but was irrelevant. There is no foundational evidence to show defendant was aware of any purity level and as such Agent Cogan expert opinion is without evidentiary basis for failure of a proper fit as required by Daubert v. Merrill Dow Pharmaceuticals, 509 U.S. 579 (1993).

Defendant was never aware of any purity level of the heroin and the agent based his belief that the possession was consistent with distribution **only on the purity level of the heroin seized from Pino – Hernandez, in Puerto Rico**. The evidence relating to possession would not necessarily accomplished the same with respect to distribution.

In US v. Boissoneault, 926 F. 2d 230, (2d Cir. 1990). The Court found that Boissoneault possessed $1,460, four small packets containing different amounts of cocaine totaling 1.99 grams of cocaine, but it was not sufficient to support in inference of intent to distribute.

7

In finding Boissoncault guilty of possession of cocaine with intent to distribute, the jury necessarily found all the elements of simple possession of cocaine in violation of 21 USC § 844. The trial court properly instructed the jury on this lesser-included offense, and there is no question that the evidence supports a possession conviction. Therefore, we vacate the conviction and sentence for possession with intent to distribute, and remand for entry of conviction for simple possession and for resentencing accordingly. See 28 USC § 2106 (1988); United States v. Swiderski, 548F 2d 445, 452 (2d Cir. 1977); United States v. Franklin, 728 F. 2d 994, 1000-01 (8th Cir. 1984); Austin v. United States, 127 US App. DC 180, 382 F. 2d 129, 140-43 (DC Cir. 1967). (At. 235)

In the instant case the Court recognized that quantity of the drugs attempted to be possessed was relevant, but expert testimony was not necessary.

MR. CAPERS: Just the expert, your Honor.

THE COURT: What's the expert going to testify to?

MR. CAPERS: As to the wholesale and retail value of heroin in New York back in September of '04.

THE COURT: What is the point of that?

MR. CAPERS: That and possession of that type, that quantity of drug -- kilogram quantity is consistent with intent to distribute.

THE COURT: You don't need that. Everybody knows that, I will preclude that. (T – 287)

Subsequently the Court allowed Agent Cogan to testify as to purity of drugs seized. Agent Cogan's testimony never related to quantity being consistent with intent to distribute. In fact the Court charge the jury, and we must assumed they followed the court's charge, that quantity was irrelevant to the issue of defendant's guilty.

8

> By the way, you heard some argument and some evidence about the amount of drugs that was involved in the case. The amount that was involved -- the amount of heroin involved is not relevant to your determination of whether the defendant is guilty. When it comes to that issue the government is not required to prove that the defendant attempted to the possess with intent to distribute any specific quantity of drugs. If the government proves beyond a reasonable doubt the three elements that I've described, that is, that the defendant attempted to possess heroin, that he acted knowingly and that he had specific intent to distribute, he's guilty of the offense if he attempted to possess any detectable amount.
>
> (T. pages 374-375)

In U.S. v. Harris and Mamone, 733 F. 2d 994 (2nd Cir., 1984). The Court found that there was evidence about attempt to distribute, but the jury charge focused on possession and there was no legally sufficient evidence that either defendant attempted to possess any heroin.

> The government's case pictured Harris as a broker and Mamone as the supplier of heroin. As a broker in the transaction, however, it simply was not necessary for Harris to ever possess any heroin, either actually or constructively, or to attempt to do so. Thus, by adducing evidence sufficient to convict Harris of attempted distribution, the government would not necessarily have accomplished the same with respect to attempted possession.
>
> The situation is somewhat different with respect to Mamone, since he was supposedly the seller in the proposed transaction, and the jury could have inferred that the parties expected that Mamone would actually deliver the heroin. On this record, however, the evidence is insufficient to convict Mamone of attempted possession of heroin. A buyer may be attempting to possess when he negotiates for a sale. And a seller may be attempting to distribute when he enters such a negotiation. Without more evidence to show what was evidence that drugs were present, or even immediately

9

available, is insufficient to convict the would-be seller of attempted possession. (at 1002-1003)

Here the Court charged the jury that quantity was not relevant to the determination of defendant's guilt, meaning not relevant to intent to distribute. Agent Cogan's testimony was irrelevant since defendant had no knowledge of the purity of the drugs seized in Puerto Rico and hence could not impact on defendant's state of mind.

## CONCLUSION

A judgment of acquittal should be entered as to defendant's conviction of possession with intent to distribute.

Very Truly Yours,

Richard E. Kwasnik

10